IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MANUEL HERNANDEZ-PARRILLA,

    Petitioner,

v.

MARY DE ANDA-YBARRA, Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement, KRISTI NOEM, Secretary, U.S. Department of Homeland Security, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement and Removal Operations, and PAMELA BONDI, U.S. Attorney General,

    Respondents.

Case No. 2:25-cv-01224-MIS-KK

## ORDER GRANTING EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER is before the Court on Petitioner Manuel Hernandez-Parrilla ("Petitioner")'s Emergency Motion for Temporary Restraining Order/Preliminary Injunction ("Emergency Motion"), ECF No. 5, filed December 10, 2025.[1] The Government filed no response. The Court held a hearing on December 15, 2025 at which all Parties were present. See Clerk's Mins. for Prelim. Inj. Hr'g, ECF No. 13. Upon due consideration of the Parties' submissions and the record, the Court will **GRANT** the Emergency Motion and issue a preliminary injunction.

---

[1] Petitioner originally filed the Emergency Motion as an attachment to his Petition for Writ of Habeas Corpus ("Peition," ECF No. 1) on December 8, 2025. ECF No. 1-3.

I.      Background

Petitioner is a noncitizen, forty-five-year-old resident of New Mexico.  Pet. ¶ 15.  He first entered the United States in either 1989 or 1990 when he was eleven years old.[2]  Id.  He is married to a United States citizen and has three children who are United States citizens.  Id. ¶ 4.  He works as a ranch-hand and is the primary breadwinner for his family.  Id.

On January 11, 2015, the U.S. Department of Homeland Security ("DHS") issued a Notice to Appear alleging that Petitioner was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen "present in the United States without being admitted or paroled."  Id. ¶ 43 (citing Notice to Appear, ECF No. 1-2 at 3).  On March 26, 2015, Petitioner was released on $7,500 bond following a bond hearing.  Id.; see also Order Granting Bond, ECF No. 1-2 at 6.  Thereafter, Petitioner applied for relief in the form of asylum, withholding of removal, protection under the Convention Against Torture, and cancellation of removal for certain nonpermanent residents.  Pet. ¶ 43.  Those applications for relief remain pending before an immigration judge following a final merits hearing on March 14, 2024, and supplemental briefing, which was completed on April 11, 2024, in the El Paso Immigration Court.  Id. ¶¶ 4, 43.

Despite Petitioner not being subject to any criminal grounds of removability, and no change in his circumstances, on September 26, 2025, DHS sent a notice to Petitioner's wife cancelling his immigration bond, finding that the "conditions" of the bond had been satisfied.[3]  Id. ¶¶ 4, 44. On November 10, 2025, DHS directed Petitioner to report to El Paso, Texas on December 18, 2025,

---

[2]     The Petition for Writ of Habeas Corpus variously asserts that Petitioner first arrived in the United States "in either 1989 or 1990 when he was eleven years old[,]" ECF No. 1 ¶ 15, and "in approximately 1998 or 1999, at a time when he was 11 years old[,]" id. ¶ 4.  Because the Petition states that Petitioner is forty-five-years-old, the Court assumes that the correct prediction is 1989 or 1990.

[3]     At the hearing, counsel for Petitioner stated that although DHS cancelled Petitioner's immigration bond, Petitioner's wife (who posted the bond) has not been refunded.

for a "case review." Id. ¶ 44. Petitioner believes that he will be detained at his case review for the remainder of his removal proceedings absent this Court's intervention. Id.

On December 8, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of New Mexico. See id. at 1. The Petition asserts that "[b]ecause his bond has been canceled, Petitioner is in the constructive custody of Respondents." Id. ¶ 5. The Petition asserts three claims: (1) a violation of the Immigration and Nationality Act ("INA"); (2) a violation of federal regulations; and (3) a violation of Petitioner's Fifth Amendment right to due process. Id. ¶¶ 45-55.

On December 10, 2025, Petitioner filed the instant Emergency Motion seeking a temporary restraining order or preliminary injunction enjoining Respondents from: "detaining Petitioner without first holding a pre-deprivation hearing before an immigration judge[;]" "removing Petitioner to any third country to which he does not have a removal order without first providing him with constitutionally-compliant procedures[;]" and "transferring Petitioner outside the District of New Mexico, where he is presently located." ECF No. 5 at 1.

The same day, the Court issued an Order expediting the Government's response and scheduling a hearing for December 15, 2025.[4] ECF No. 6. The Court stated that it would be a bifurcated hearing first addressing whether the Court has jurisdiction to grant Petitioner relief. Id. at 2. The Court specifically identified two jurisdictional issues to be addressed at the hearing: "(1) whether Petitioner is 'in custody' for purposes of 28 U.S.C. § 2241; and (2) whether jurisdiction lies in the District of New Mexico for Petitioner's potentially imminent detention in El Paso, Texas

---

[4] Also on December 10, 2025, the Court issued an Amended Order directing the clerk to serve Respondents with the Petition, and ordering Respondents to show cause why the Petition should not be granted. ECF No. 8.

3

on December 18, 2025." Id.  The Court indicated that "[i]f jurisdiction is established, the Court will then consider arguments on the Emergency Motion." Id.

On December 15, 2025, the Court held a hearing on the Emergency Motion.  See Clerk's Mins. for Prelim. Inj. Hr'g, ECF No. 13.  The Court's jurisdiction was uncontested and the Government conceded that Petitioner is in constructive custody.  Id.  Counsel for the Government stated that after speaking with the Enforcement and Removal Operations for the El Paso Field Office, Immigration and Customs Enforcement ("ICE ERO"), it is unclear why Petitioner's bond was cancelled; ICE ERO further represented to counsel for the Government that Petitioner's bond should not have been cancelled, and that Petitioner is not amenable to detention at this time.  Id.  However, counsel for the Government further represented that he did not know whether Petitioner would be given a pre-deprivation bond hearing should he be detained at his "case review" on Thursday, December 18, 2025 in El Paso.  Id.

**II.      Legal Standard**

"A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."  GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984).  As such, it "may only be awarded upon a clear showing that the [movant] is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  See also Planned Parenthood of Kan. v. Andersen, 882 F.3d 1205, 1223 (10th Cir. 2018) ("Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal.").

> To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

4

Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007). "The third and fourth factors 'merge' when, like here, the government is the opposing party." Aposhian v. Barr, 958 F.3d 969, 978 (10th Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)), abrogated on other grounds by Garland v. Cargill, 602 U.S. 406 (2024).

A party seeking a preliminary injunction must demonstrate that "all four of the equitable factors weigh in its favor[,]" Sierra Club, Inc. v. Bostick, 539 F. App'x 885, 888 (10th Cir. 2013), and "a plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted[,]" Vill. of Logan v. U.S. Dep't of Interior, 577 F. App'x 760, 766 (10th Cir. 2014). See also Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009) ("To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor . . . ."). "[B]ecause a preliminary injunction is an extraordinary remedy, the [movant's] right to relief must be clear and unequivocal." Aposhian, 958 F.3d at 978 (alterations in original) (quoting Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1261 (10th Cir. 2004)).

Moreover, three types of preliminary injunctions are disfavored and require a movant to satisfy a heightened standard. Colorado v. U.S. Env't Prot. Agency, 989 F.3d 874, 883 (10th Cir. 2021) (citing N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior, 854 F.3d 1236, 1246 n.15 (10th Cir. 2017)). "They are '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" Id. at 883-84 (quoting N.M. Dep't of Game & Fish, 854 F.3d at 1246 n.15)). "When seeking a disfavored injunction, the movant 'must make a strong showing' both on the likelihood of success on the merits and on the balance

5

of the harms." Id. at 884 (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 976 (10th Cir. 2004)).

### III. Discussion

For the following reasons, the Court finds that Petitioner is entitled to a preliminary injunction. Given that the circumstances of this case require an expedited decision, the Court limits its analysis to that which is necessary to resolve the Emergency Motion.

"The habeas statute provides that a federal district court may entertain a habeas application by a person held 'in custody under or by color of the authority of the United States,' or 'in custody in violation of the Constitution or laws or treaties of the United States.'" Munaf v. Geren, 553 U.S. 674, 685 (2008) (citing 28 U.S.C. §§ 2241(c)(1), (3)). "An individual is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce' him." Id. at 686 (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)).

"District courts are limited to granting habeas relief 'within their respective jurisdictions.'" Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)). This language requires "nothing more than that the court issuing the writ have jurisdiction over the custodian." Id. (quoting Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 495 (1973)).

The Court's jurisdiction over the Petition and Respondents is uncontested, and the Court finds that it has jurisdiction over this matter.

On the merits, the Court finds that Petitioner has satisfied his burden of establishing that all four equitable factors weigh in his favor and that he is entitled to a preliminary injunction. As an initial matter, the Court will assume that the requested injunction is a "disfavored" injunction inasmuch as it affords Petitioner all the relief that he could recover at the conclusion of a full trial

on the merits. However, the Court further finds that Petitioner has made a "strong showing" both on the likelihood of success on the merits and on the balance of the harms.

a) Likelihood of success on the merits

First, Petitioner has made a strong showing that he is substantially likely to succeed on the merits of at least Counts I and III of his Petition.

As to Count I, Petitioner is substantially likely to establish that he is not subject to mandatory detention while in removal proceedings under 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(c)(1). Section 1225 generally applies to "arriving aliens," and Section 1225(b)(2)(A) specifically applies to "an alien who is an applicant for admission," or "an alien seeking admission[.]" Petitioner is none of these things, as confirmed by the Notice to Appear dated January 11, 2015, which identifies Petitioner's status as follows: "You are an alien present in the United States who has not been admitted or paroled." ECF No. 1-2 at 3. The Notice to Appear does not check the box for "You are an arriving alien." See id. Consequently, Petitioner is substantially likely to prove that he is not subject to mandatory detention under Section 1225(b)(2)(A). See Carlos v. Noem, Case No. 2:25-cv-01900-RFB-EJY, 2025 WL 2998184, at *1 (D. Nev. Oct. 24, 2025) (observing that "[t]he overwhelming majority of district courts across the country" that have considered DHS and the Board of Immigration Appeals' new interpretation of 8 U.S.C. § 1225(b)(2) as mandating the detention of all undocumented noncitizens in the U.S. pending the resolution of their removal proceedings no matter how long they have resided in the country, without consideration of whether the government has a legitimate interest in detaining an individual because they are either a flight risk, dangerous, or a threat to national security "have found it incorrect and unlawful").

7

Section 1226(c)(1) applies to aliens who have committed certain crimes or engaged in terrorist activities. There is no evidence or argument that Petitioner qualifies for mandatory detention under any of the provisions in 8 U.S.C. § 1226(c)(1). As such, Petitioner is substantially likely to prove that he is not subject to mandatory detention under Section 1226(c)(1).

Instead, Petitioner is substantially likely to establish that he is subject to discretionary detention under 8 U.S.C. § 1226(a), which applies to aliens already present in the United States. Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). And "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Id. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Noncitizens released on immigration bond are entitled to a pre-detention hearing if their bond is revoked. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (permanently enjoining the government from rearresting a noncitizen released on immigration bond without a pre-detention hearing before an Immigration Judge to determine whether his bond should be revoked or altered). Accordingly, Petitioner has made a strong showing that he is likely to succeed on Count I and is therefore entitled to a pre-detention bond hearing.

As to Count III, the Court finds that Petitioner is substantially likely to establish that detention without a bond hearing will violate his due process rights. The Court examines "procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted).

The Court finds that there is a substantial likelihood that Petitioner will be able to establish that he has a protected liberty interest in his continued conditional release from immigration

8

detention. See, e.g., Lopez-Arevelo v. Ripa, __ F. Supp. 3d __, 2025 WL 2691828, at *11 (W.D. Tex. Sep. 22, 2025) (finding that once released from immigration detention, noncitizens acquire a "a protectable liberty interest in remaining out of custody on bond" (quoting Diaz v. Kaiser, Case No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025))).

The Court further finds a substantial likelihood that Petitioner can establish that Respondents have (or will imminently) deprive him of that liberty interest without constitutionally adequate procedural safeguards. In this regard, the Court considers the factors set forth in Mathews v. Eldridge:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

It is highly likely that Petitioner can show a significant private interest in remaining free from detention after being released on his own recognizance. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). And Petitioner's interest in freedom is particularly weighty because he has spent ten years out of custody, during which he has been employed as a ranch-hand and been the primary breadwinner for his wife and three children.

It is also highly likely that Petitioner can show a significant risk of erroneous deprivation. Under 8 U.S.C. § 1226(b), the Attorney General has the authority to revoke a noncitizen's release "at any time." However, as many courts have noted, the Board of Immigration Appeals has long

9

recognized a limitation on this authority, requiring a material change in circumstances before it can be exercised. See, e.g., Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021) (citing In re Sugay, 17 I & N Dec. 637, 640 (B.I.A. 1981)). Relying on this limitation, courts have required "a material change in circumstances as to whether 'the noncitizen poses a danger to the community or an unreasonable risk of flight'" before a noncitizen's release may be revoked. Y.M.M. v. Wamsley, Case No. 2:25-cv-02075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (quoting United States v. Cisneros, Case No. 19-cr-00280-RS-5, 2021 WL 5908407, at *4 (N.D. Cal. Dec. 14, 2021)). Petitioner has made a strong showing that circumstances have not materially changed because he has been gainfully employed, has complied with all of the conditions of his release, and there has been no evidence or argument that he has committed a crime. In fact, at the hearing counsel for the Government stated that ICE ERO in El Paso represented that Petitioner's bond should not have been revoked and that he is not amenable to detention at this time. See Clerk's Mins. for Prelim. Inj. Hr'g, ECF No. 13.

Finally, it is highly likely Petitioner can show that the Government's interest in re-detaining him without a hearing is low. Again, Petitioner is neither a danger nor a flight risk, has no criminal record, has been gainfully employed, has complied with all of the conditions of his release, and has a pending asylum petition. Detaining him therefore appears to serve no valid purpose—a fact his initial release confirms. In addition, pre- or post-detention hearings are relatively routine and do not impose a heavy burden on the government. Therefore, Petitioner has made a strong showing that he will succeed on his due process claim.

b) Irreparable harm

Having established a substantial likelihood of success on the merits of his constitutional claim, Petitioner has a fortiori established a substantial likelihood of irreparable injury. Free the

Nipple-Fort Collins v. City of Fort Collins, Colo., 916 F.3d 792, 806 (10th Cir. 2019) (noting "that well-settled law supports the constitutional-violation-as-irreparable-injury principle" and that "in the context of constitutional claims, the principle collapses the first and second preliminary-injunction factors, equating likelihood of success on the merits with a demonstration of irreparable injury").

   c) Balance of the harms and public interest

Third, the Court finds that Petitioner has made a strong showing that the threatened injury outweighs any harm a preliminary injunction may cause the Government, and that the injunction will not adversely affect the public interest.

The likely burden Respondents would bear if the Court orders a bond hearing is minimal compared to the weighty liberty interests at stake for Petitioner. While the Government unquestionably has an interest in ensuring that Petitioner appears for his removal proceedings, the undisputed record shows that detention is unnecessary to protect this interest—DHS has already determined that Petitioner is neither a danger nor a flight risk; he has ties to the community; and, perhaps most critically, for ten years he has complied with all of the conditions of his release. And, again, at the hearing the Government stated that ICE ERO in El Paso represented that Petitioner's bond should not have been revoked and that he is not amenable to detention at this time. See Clerk's Mins. for Prelim. Inj. Hr'g, ECF No. 13. Also, again, pre- or post-detention hearings are relatively routine and do not impose a heavy burden on the government. "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's] favor.'" Singh v. Andrews, __ F. Supp. 3d. __, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) (alterations in original) (quoting Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017)).

The public interest likewise weighs in Petitioner's favor. Even if Respondents were to ultimately determine that Petitioner's detention is proper under Section 1226(a), requiring them to hold a bond hearing would still promote the public interest because "[t]he public has a strong interest in upholding procedural protections against unlawful detention[.]" Diaz v. Kaiser, Case No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting Jorge M. F. v. Wilkinson, Case No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)).  And if, as seems likely, that Petitioner's imminent detention is not legally or constitutionally justified, then it would manifestly promote the public interest to require Respondents to provide him a pre-detention bond hearing.  Not only would this save federal taxpayers from bearing the expense of his detention, but also "it is always in the public interest to prevent the violation of a party's constitutional rights." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1147 (10th Cir. 2013) (quoting Awad v. Ziriax, 670 F.3d 1111, 1132 (10th Cir. 2012)), aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014); see also Singh, 2025 WL 1918679, at *9.

Because Petitioner has established that all four equitable considerations weigh in his favor, injunctive relief is appropriate.

### IV.   Conclusion

Therefore, it is **HEREBY ORDERED** that:

1. Petitioner's Emergency Motion for a Preliminary Injunction, ECF No. 5, is **GRANTED**.

2. The Government is **ENJOINED** from detaining Petitioner without a pre-deprivation bond hearing before an Immigration Judge, at which the Government must prove by clear and convincing evidence changed circumstances rendering

Petitioner a danger or flight risk.[5]  Lopez-Arevelo, 2025 WL 2691828, at *12-13; Velasquez Salazar v. Dedos, __ F. Supp. 3d. __, 2025 WL 2676729, at *1, *6-9 (D.N.M. Sep. 17, 2025).  The Court places the burden on the Government because an Immigration Judge has already determined that Petitioner is not a danger or a flight risk and granted him bond on March 25, 2015, and circumstances have not changed in the interim.  See Lopez-Arvelo, 2025 WL 2691828, at *12-13; Velazquez Salazar, 2025 WL 2676729, at *6-9.  Indeed, ICE ERO in El Paso represented to Government's counsel that Petitioner's bond should not have been cancelled and that he is not amenable to detention at this time.  See Clerk's Mins. for Prelim. Inj. Hr'g, ECF No. 13.

3. The Government is **FURTHER ENJOINED** from requiring Petitioner to leave the District of New Mexico; that includes requiring him to attend his "case review" in El Paso, Texas on Thursday, December 18, 2025.  If the Government wishes to have a case review with Petitioner while these proceedings are pending, it shall have it in the District of New Mexico.  The Government shall not arrest, detain, or otherwise punish Petitioner for failing to appear at his "case review" in El Paso.

4. The Government is **FURTHER ENJOINED** from transferring or otherwise removing Petitioner from the District of New Mexico while these proceedings are pending.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[5] See Panosyan, 854 F. App'x at 788; Y.M.M., 2025 WL 3101782, at *2.